IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:17-cr-148-SI |
| v. | **OPINION AND ORDER** |
| CHRISTOPHER SALSBURY DANA, | |
| Defendant. | |

**Michael H. Simon, District Judge.**

On April 13, 2020, Defendant Christopher Salsbury Dana ("Mr. Dana") petitioned the warden of the Federal Correctional Institution at Sheridan, Oregon ("FCI Sheridan") for compassionate release. On May 15, 2020, Mr. Dana filed in this Court a Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF 101. The Government opposes Mr. Dana's motion on the merits. For the reasons that follow, the Court GRANTS Mr. Dana's motion for compassionate release.

**LEGAL FRAMEWORK FOR COMPASSIONATE RELEASE**

**A.  Modifying a Term of Imprisonment for Compassionate Release**

A district court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824-25 (2010).

Congress, however, has expressly authorized a district court to modify a defendant's sentence in three limited circumstances: (1) when granting a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A); (2) when expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; or (3) when a defendant has been sentenced based on a sentencing range that has subsequently been lowered by the Sentencing Commission. 18 U.S.C. § 3582(c)(1). The motion before the Court seeks compassionate release.

Before 2018, § 3582(c)(1)(A) required that a motion for compassionate release could be brought only by the Bureau of Prisons ("BOP"). The First Step Act ("FSA"), Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), amended § 3582 to authorize courts to grant a motion for compassionate release filed by a defendant. A defendant, however, may only bring a motion for compassionate release *after*: (1) petitioning the BOP to make such a motion on the defendant's behalf; *and* (2) either (a) the defendant has exhausted all administrative appeals after the BOP denied the defendant's petition or (b) thirty days has elapsed after the warden of the defendant's facility received the defendant's petition, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).[1]

Compassionate release under § 3582(c)(1)(A) authorizes a court to modify a defendant's term of imprisonment if the court finds that two conditions have been satisfied. The first is that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The second is that "such a reduction is consistent with applicable policy statements issued by the

---

[1] On June 2, 2020, the United States Court of Appeals for the Sixth Circuit held that a defendant's failure to satisfy this administrative exhaustion requirement does not deprive a court of subject-matter jurisdiction; instead, this is a mandatory claim-processing rule that binds the courts when properly asserted by the Government and not forfeited. *United States v. Alam*, --- F.3d ---, 2020 WL 2845694 (6th Cir. June 2, 2020). The Ninth Circuit has not yet addressed this issue.

Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The court also must *consider* the factors

set forth in 18 U.S.C. § 3553(a), to the extent they are applicable. *Id.*

## B.  Extraordinary and Compelling Reasons

The Sentencing Commission policy statement for reducing a term of imprisonment under

§ 3582(c)(1)(A) is found in the United States Sentencing Guidelines Manual ("USSG") at

§ 1B1.13. That policy statement explains the phrase "extraordinary and compelling reasons."

USSG § 1B1.13(1)(A) and cmt. 1. According to the policy statement, extraordinary and

compelling reasons are: (1) the medical condition of the defendant (defined as whether the

defendant is suffering from a terminal illness; or is suffering from a serious physical or medical

condition, serious functional or cognitive impairment, or deteriorating physical or mental health

because of the aging process, "that substantially diminishes the ability of the defendant to

provide self-care within the environment of a correctional facility and from which he or she is

not expected to recover"); (2) the age of the defendant (defined as whether the defendant is at

least 65 years old, is experiencing a serious deterioration in physical or mental health because of

the aging process, and has served at least 10 years or 75 percent of his or her term of

imprisonment, whichever is less); (3) family circumstances (defined as the death or

incapacitation of the caregiver of the defendant's minor child or minor children or the

incapacitation of the defendant's spouse or registered partner when the defendant would be the

only available caregiver for the spouse or registered partner); and (4) any other extraordinary and

compelling reason determined by the Director of the BOP. USSG § 1B1.13 cmt. 1.

We are currently in a global health crisis caused by the 2019 novel Coronavirus

("COVID-19"), which already has taken the lives of more than 110,000 people just in the United

States during the past several months. When a defendant has a chronic medical condition that

may substantially elevate the defendant's risk of becoming seriously ill or dying from

COVID-19, that condition may satisfy the standard of extraordinary and compelling reasons. Under these circumstances, a chronic medical condition (*i.e.*, one from which a defendant is not expected to recover) reasonably may be found to be both serious and capable of substantially diminishing the ability of the defendant to provide self-care within the environment of a correctional facility, even if that condition would not have constituted an extraordinary and compelling reason absent the heightened risk of COVID-19. *See generally* USSG § 1B1.13 and cmt. 1(A)(ii)(I).

Alternatively, USSG § 1B1.13, as currently written, does not constrain the Court's ability to find extraordinary and compelling reasons here. Because the Sentencing Commission's policy statement was not amended after enactment of the First Step Act, "a growing number of district courts have concluded the Commission lacks an applicable policy statement regarding when a judge can grant compassionate release" . . . "because the Commission never harmonized its policy statement with the FSA." *United States v. Mondaca*, 2020 WL 1029024, at *3 (S.D. Cal. Mar. 3, 2020) (citing *Brown v. United States*, 411 F. Supp. 3d 447, 499 (canvassing district court decisions)) (quotation marked omitted); *see also United States v. Redd*, 2020 WL 1248493, at *6. (E.D. Va. Mar. 16, 2020) ("[T]here does not currently exist, for the purposes of satisfying the ["FSA's] 'consistency' requirement, an 'applicable policy statement.'"); *United States v. Barber*, 2020 WL 2404679, at *3 (D. Or. May 12, 2020) ("The Court is persuaded by the reasoning of numerous other district courts and holds that it is not constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction.") (citations and quotation marks omitted).

As explained by one court, "a majority of federal district courts have found that the most natural reading of the amended § 3582(c) and [28 U.S.C.] § 994(t) is that the district court

assumes the same discretion as the BOP director when it considers a compassionate release motion properly before it." *United States v. Perez*, 2020 WL 1180719, at *2 (D. Kan. Mar. 11, 2020). Indeed, the Government previously conceded this point in *United States v. Young*, agreeing that "the dependence on the BOP to determine the existence of an extraordinary and compelling reason, like the requirement for a motion by the BOP Director, is a relic of the prior procedure that is inconsistent with the amendments implemented by the First Step Act." 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020). The court in *Young* followed many other district courts in recognizing that § 1B1.13's defined categories are not exclusive: "In short, federal judges are no longer constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction." *Id*. The Court agrees with this alternative analysis as well.

**C.  Safety of Other Persons and the Community**

The policy statement further provides that, in addition to finding extraordinary and compelling reasons, a court also must find that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." USSG § 1B1.13(2). The factors to be considered in deciding whether a defendant is a danger to the safety of any other person or to the community are: (1) the nature and circumstances of the offense (including whether the offense is a crime of violence, a violation of 18 U.S.C. § 1591, a federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device); (2) the weight of the evidence; (3) the history and characteristics of the defendant (including, among other things, the defendant's character, physical and mental condition, and family ties and whether at the time of the offense or arrest the defendant was on probation, parole, or other release); and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

**D. Sentencing Factors Under § 3553(a)**

Finally, as provided in both § 3582(c)(1)(A) and the policy statement, a court must consider the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable. These factors include the nature and circumstances of the offense; the history and characteristics of the defendant; and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with needed training, medical care, or other treatment in the most effective manner. 18 U.S.C. § 3553(a). The policy statement also recognizes that the sentencing court "is in a unique position to determine whether the circumstances warrant a reduction . . ., after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement[.]" USSG § 1B1.13 cmt. 4.

## DISCUSSION

Mr. Dana is a 59-year-old man who is at high risk for contracting and suffering serious illness from the new coronavirus disease, COVID-19, because of his severely immunocompromised status and chronic health conditions. According to BOP's records, Mr. Dana's release date is December 21, 2020. Considering his credit for good conduct, Mr. Dana has already served more than 80 percent of his 48-month sentence. More significantly, he is eligible and has been approved for transfer to prerelease community corrections at the Northwest Residential Reentry Center ("NWRRC") on July 27, 2020. His transfer to the NWRRC several weeks in advance of that date would not endanger the public and may significantly protect Mr. Dana from COVID-19.

Mr. Dana's medical history includes the following serious conditions: two pulmonary embolisms (blockage of an artery in the lungs), Kaposi sarcoma (a cancer that causes lesions and abnormal tissue to grow), and Methicillin-resistant Staphylococcus aureus (MRSA – a bacteria

that causes dangerous infections). He also has a severely compromised immune system, and a history of tobacco and methamphetamine use. Because of the health effects on his lungs caused by his medical conditions, Mr. Dana suffers from shortness of breath.

There is no dispute that we are in a global health crisis and pandemic. The CDC warns that "[p]eople 65 years and older" are "at high-risk for severe illness from COVID-19." *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (lasted visited June 4, 2020). In addition, the CDC explains that people of all ages with certain underlying medical conditions, particularly if not well controlled, also are at high-risk for severe illness from COVID-19. According to the CDC, these underlying medical conditions are:

- People with chronic lung disease or moderate to severe asthma[.]
- People who have serious heart conditions[.]
- People who are *immunocompromised*[.]
      \*   \*   \*
- People with severe obesity (body mass index [BMI] of 40 or higher)[.]
- People with diabetes[.]
- People with chronic kidney disease undergoing dialysis[.]
- People with liver disease[.]

*Id*. (emphasis added). Mr. Dana's medical condition places him in the CDC's category of persons at "high risk for severe illness from COVID-19."

As previously noted, Mr. Dana is incarcerated at FCI Sheridan. That BOP is not reporting any positive cases of COVID-19, either among inmates or staff, at FCI Sheridan. *See* https://www.bop.gov/coronavirus/ (last visited June 9, 2020). The BOP's information, however, is only of limited value. The BOP does not disclose whether or to what extent a facility is testing symptomatic or asymptomatic inmates, both or neither. In *United States v. Pabon*, 2020 WL 2112265, at \*5 (E.D. Pa. May 4, 2020), the court cited Johns Hopkins Bloomberg School of Public Health Professor Leonard Rubenstein to explain the link between testing and limiting the

spread of COVID-19: "Unless you do universal testing in all environments, the risk of spread is

enormous. If you are waiting for symptoms to emerge before you do the testing, you are getting a

false picture of what is going on . . . It's too late." *Id.* (citing Kevin Johnson, Mass Virus Testing

in State Prisons Reveals Hidden Asymptomatic Infections; Feds Join Effort, USA TODAY

(Apr. 25, 2020, updated Apr. 27, 2020),

https://www.usatoday.com/story/news/politics/2020/04/25/coronavirus-testing-prisons-

revealshidden-asymptomatic-infections/3003307001/) (last visited June 2, 2020); *see also Arias*

*v. Decker*, 2020 WL 2306565, at *8 (S.D.N.Y. May 8, 2020) ("[W]hen it comes to vulnerable

detainees . . ., monitoring them for signs of infection is too little, too late.").

The Government does not dispute that Mr. Dana has significant health issues that place

him at great risk of COVID-19. The Government argues only that Mr. Dana has failed to show

that he is not a danger to the community and that the community would be best served if he

transitions to a halfway house on July 27, 2020, rather than a month or two sooner.

Mr. Dana's current conviction is for bank robbery (unarmed), in violation of 18 U.S.C.

§ 2113(a). He also has a prior conviction for five counts of bank robbery (all unarmed) as well as

prior convictions for delivery of methamphetamine and possession of methamphetamine. On

February 6, 2019, the Court sentenced Mr. Dana to a below-guidelines sentence of 48 months in

prison, followed by a three-year term of supervised release. Before his plea and sentencing, the

Court allowed Mr. Dana temporary release from pretrial custody so that he could complete and

graduate from a three-month inpatient treatment program for his gambling addiction.

Immediately following his graduation, Mr. Dana voluntarily surrendered back into pretrial

custody without incident. The Court also temporarily released Mr. Dana on two other occasions:

once to fly across the country to visit his father who was dying, and a second time to fly across

PAGE 8 – OPINION AND ORDER

the country to attend his father's funeral. Mr. Dana promptly returned to custody both times, also without incident. Mr. Dana also maintains a strong relationship with his gambling recovery mentor.

Compassionate release is "rare" and "extraordinary," and courts routinely deny such claims. *United States v. Mangarella*, 2020 WL 1291835, at *2–3 (W.D.N.C. Mar. 16, 2020) ("[A] compassionate release . . . is an extraordinary and rare event.") (citation omitted). A defendant bears the burden to show special circumstances meeting the high bar set by Congress and the Sentencing Commission for compassionate release. *See United States v. Greenhut*, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020) (holding that a defendant bears the burden of establishing entitlement to sentencing reduction and citing *United States v. Sprague*, 135 F.3d 1301, 1306-07 (9th Cir. 1998)). As other district courts have noted: "To be faithful to the statutory language requiring 'extraordinary and compelling reasons,' it is not enough that Defendant suffers from . . . chronic conditions that [he] is not expected to recover from. Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Ayon-Nunez*, 2020 WL 704785, at *2–3 (E.D. Cal. Feb. 12, 2020) (rejecting a claim for compassionate release from a defendant suffering from severe back injuries and epilepsy) (brackets in original) (quoting *United States v. Weidenhamer*, 2019 WL 6050264, at *5 (D. Ariz. Nov. 8, 2019)). The Court also must consider the sentencing factors under § 3553(a), to the extent they are applicable. *See* § 3582(c)(1)(A) and USSG § 1B1.13.

The Court has considered all the relevant factors for compassionate release. Based on Mr. Dana's serious medical condition, his criminal history, the fact that Mr. Dana has served approximately 80 percent of his sentence (considering good behavior credit), and the fact that in approximately six weeks Mr. Dana is scheduled to be released to the NWRRC, the Court

concludes that Mr. Dana has made a sufficient showing of special circumstances to meet the high bar set by Congress and the Sentencing Commission for compassionate release.

## CONCLUSION

The Court GRANTS Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (ECF 101). The Court will prepare an Amended Judgment to reflect a sentence of time-served, followed by a three-year term of supervised release. In addition to the mandatory, standard, and special conditions of supervision already imposed, which will remain unchanged, Mr. Dana, after successfully completing a two-week quarantine period, must reside at and participate in the program of a residential reentry center for not more than 120 days, to be released at the direction of the probation officer, and Mr. Dana must follow the rules and regulations of the center, which may include location monitoring.

**IT IS SO ORDERED.**

DATED this 9th day of June, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge